## Rogers v. McAlister.

(Decided January 14, 1913.)

### Appeal from Fayette Circuit Court.

1. Land—Name of Person in Whom Assessed—Tax Sale—Purchaser at—Liens.—Land should be assessed in the name of the person owning the first freehold estate therein, and if it is assessed in the name of one holding it as his agent, a sale for the taxes will not give the purchaser title to the property but only a lien on it for the amount of his bid.

2. Land—Tax Sale—Purchaser at—Title.—The purchaser at a tax sale acquires only the title of the person against whom the land was assessed, and where land is assessed in the name of the agent of the life tenant, the title of the remainderman is not affected by the sale.

ALLEN & DUNCAN for appellant.

HUNT, BULLOCK & HUNT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

About the year 1833, Mrs. Grace Lee who then owned the property in contest here by her will devised it to Lucy Price and Joseph Price, two of her negro slaves during their lives, providing in the will for their manumission or making them free persons; also providing that at their death the property should go to her heirs at law. Lucy Price died many years ago, and Joseph Price left Lexington, leaving his sister, Mary Caldwell, in possession of the property. After he had been gone some years, he wrote her the following letter:

"Baltimore, Nov. 26, 1890:
Dear Sister again I will hastend to answer your kind and welcome letter which I received this morning I will be home just as soon as I can and you must take good care of yourself and try to rent the proptey out at the best advance. You say that the proptey is not in a good fix if you can lease it out a term of years do it try to make an agreement further more I also wish him to draw up an agreement and get all you can for it to help to take care of you and try to keep the taxes up and I wish your health was good so you can work like you uster you say so many persons want to buy. you had better try and sell it if you can get a good price for it. *I give it to you to take care of you* and I hold no claim on it if you can sell it Write soon.

from your beloved'
Brother Joseph Price best wishes to all."

He has not been heard from since. Mary Caldwell continued to live in the property, and it was assessed in her name for taxation during the years 1890, 1891, 1892, 1893, 1894 and 1895, by the state as well as by the city of Lexington. The taxes due the state and the county for the year 1895 were not paid, and the property was sold by the sheriff on September 14, 1896, and bought in by the state and county for the sum of $56.19, the amount of the taxes and charges. On September 22, 1896, or eight days after the tax sale in a suit brought by the heirs at law of Mrs. Grace Lee against Mary Caldwell and others, it was adjudged that Lucy Price and Joseph Price were then dead, and the property was ordered to be sold for a division of the proceeds among the heirs at law of Mrs. Lee. At the sale had under this judgment the property was purchased by Daniel McKenna. He filed exceptions to the report of sale on the ground of the existence of liens in favor of the state and county for the taxes for the year 1895, setting up that the property had been sold for these taxes and that a lien existed also in favor of the city on account of the non-payment of taxes for a number of years. The plaintiff contested the validity of the tax liens but on a hearing of the exceptions, they were overruled, the circuit court directing the commissioner out of the proceeds of the sale to pay the taxes assessed against the property. The commissioner by some means did not pay the taxes due the state and county for the year 1895, for which the property had been sold. Why this was omitted does not appear. McKenna who had bought the property for James McAlister, transferred it to him. On May 8, 1911, in pursuance of the statute the property was exposed for sale at public auction by W. G. Dunlap, revenue agent for Fayette County under the direction of the Auditor by virtue of the purchase made by the state and the county for the taxes for the year 1895; and the defendant, Frank Rogers purchased the property for the sum of $75.35, the amount of the delinquent taxes, interest, penalties and cost. Thereupon the Auditor of the state executed and delivered to Rogers a deed for the property. On June 2, 1911, James McAlister brought this suit against Frank Rogers to cancel the deed executed to him by the Auditor alleging that it was void for a number of reasons. He tendered to Rogers the amount he had paid with interest on account of the taxes. Rogers declined to accept it, and he paid the money into

court. Rogers filed an answer and an amended answer to which the circuit court sustained a demurrer; Rogers failing to plead further, the court entered a judgment cancelling the deed made to Rogers by the Auditor, and directing the money which McAlister had paid into court to be paid over to Rogers. From this judgment Rogers appeals.

We deem it necessary to consider only one question on the appeal. Rogers alleged in his answer that Mary Caldwell held the property either in her own right or as agent for Joseph Price, that he did not know which of these allegations was true but that one or the other was true and he did not know which was true. The assessment of the property under which the tax sale was had, was made in the name of Mary Caldwell. Where an answer contains alternative allegations each alternative must present matter sufficient in law to constitute a defense to the action. If either of them fails to state facts sufficient to support the defense, the demurrer to it is properly sustained. (Hoffman v. City of Maysville, 123 Ky. 707.) The statute regulating the assessment of property provides:

"Real estate or any interest therein shall be listed in the county or district where situated, against the owner of the first freehold estate therein." (Ky. St. Sec. 4049.)

If Mary Caldwell was holding the property as the agent of Joseph Price she did not own any freehold estate therein, and the property should have been assessed in the name of Joseph Price who was the owner of the first freehold estate therein. A valid assessment is a pre-requisite to a valid sale, and a tax deed passes no title other than that of the person in whose name the property is assessed. (Johnson v. McIntire, 1 Bibb. 295, Eastern Ky. Coal Lands Corporation v. Com., 127 Ky. 720, and cases cited.) In White v. McIntire, 145 Ky., 59, property which belonged to J. B. White, was assessed in the name of his son, Elmer White, who lived upon it. It was sold for the taxes, and a deed was made to the purchaser by the sheriff. It was held that the property not having been assessed against the owner the purchaser took no title by his purchase, but that as the taxes were a lien upon the property, he acquired a lien thereon under Section 4036 Ky. St. for the amount he had paid. That action is in these words:

"Whenever any person shall purchase property sold for delinquent taxes, and the sale shall be set aside because of any irregularity, the purchaser shall have a lien on the property for the amount of taxes and cost paid by him, and for which the property is liable, with legal interest from the time of such payment, which may be recovered from the owner of the property or person owning the same."

In the previous case of Brady v. Sears, 138 Ky. 230, we held that where land had been assessed in the name of the life tenant and sold for the taxes, the purchaser did not acquire the title of the remainderman without giving the remainderman an opportunity to redeem it by the payment to the purchaser of his money with interest. It is insisted that as McKenna knew that the sale had been made for the taxes and filed his exceptions on this ground in the circuit court, he had an opportunity to redeem the property, and having failed to redeem it, should be concluded here. But under the order of the court, he paid the money into court, and the court ordered the commissioner to pay it to the proper officers of the state. He had a right to presume that the commissioner had done his duty; McAlister had no notice of the sale of the property by the revenue agent, and as soon as he learned of it, he tendered the amount to Rogers, the purchaser. There was no such negligence on his part or unreasonable delay as should affect his legal right. The sale was invalid. There was a lien on the property for the taxes; nothing more. The failure of the commissioner to pay off this lien added nothing to it, and there being only a lien on the property, the circuit court properly cancelled the deed and directed the fund in court to be paid to Rogers. All the subsequent proceedings rest upon the assessment. The property having been assessed in the name of Mary Caldwell, the purchaser at the sale acquired no other title than she had, holding it as the agent of Joseph Price. The assessment not being properly made, the title of the remainderman was not affected by the sale, and while the purchaser acquired under the statute a lien on the property for his money, he got nothing more.

Judgment affirmed.