# Schaengold v. Behen.

February 10, 1948.

Rodney G. Bryson, Judge.

Leo Weinberger and Lorimer W. Scott for appellant.

John Wm. Heuver for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

This is a suit by appellant, plaintiff below, for specific performance of a lease and option contract alleged to have been entered into with him by appellee, defendant below. The lower court having sustained a demurrer to the appellant's petition as amended, he prosecutes this appeal.

The petition, as amended, states that on May 7, 1945, appellant and appellee, a married woman, entered into a contract in writing by which she agreed to lease to him for a period of 20 years, beginning June 1, 1945, her undivided one-half interest in and to a tract of real estate at the N. W. corner of 7th St. and Madison Ave. in Covington, Ky., which is fully described in the petition; that by the terms of said agreement, appellant agreed to pay to appellee the sum of $2,100 annually, payable in monthly installments of $175 each on the first day of each month, and further agreed that at the end of the rental period of 20 years, appellant was to have the option to purchase appellee's one-half interest in said real estate at an agreed price of $25,000; that pursuant to said agreement, he executed a written lease with option to purchase, in accordance with the terms of the written contract, and on June 8, 1945, tendered to appellee a check for the first month's payment but that she returned said check and refused and still refuses to execute said lease and option pursuant to her written agreement or to surrender or deliver possession of said property in accordance with the said agreement and lease executed by the appellant. He prays that she be required to deliver possession of her undivided one-half interest in said real estate to plaintiff; that she be required to execute and deliver a lease and option contract pursuant to the terms of the written agreement and in the event of her failure to do so that the Master Commissioner be directed by the court to execute said lease and option for and on her behalf.

Filed with the petition as an exhibit is a copy of the alleged agreement referred to in the petition. This agreement is in the form of a proposition directed to Frederick A. Schmidt, Inc., a real estate brokerage firm, apparently acting as the agent for appellant, and begins with,

"I hereby agree to lease to Sol Schaengold a one-half interest in the premises at the N. W. corner of 7th St. and Madison Ave., Covington, Ky."

It goes on into detailed provisions as to payment of taxes, repairs, insurance and other provisions not necessary to repeat here and provides that this agreement will be evidenced by a regular lease with option to purchase, as hereinbefore referred to. Filed also is a copy of the proposed lease and option drawn up in accordance with the terms of the alleged agreement. Since the dispute is not as to the terms of the agreement or lease, but as to whether or not appellee had the right to enter into the original agreement to execute said lease, it will not be necessary to lengthen this opinion by inserting the details of the agreement and lease here. It only need be said here that appellant has signed and acknowledged this lease and option and has accepted by his signature the alleged agreement to execute said lease and option submitted to the broker, Schmidt, in the form of a proposition as above referred to. Appellee has not signed the lease and option. Neither has she signed the agreement or acknowledged the proposition directed to Frederick A. Schmidt, Inc., referred to above, unless a telegram purporting to do so is held to be an acceptance. That telegram filed as an exhibit is not dated but was sent from Lansing, Michigan, and reads as follows:

Frederick Schmidt, Inc.

"Michael Madden, Agent—Fifth and Main St., (Cin)—

"Will accept Schaengold proposition."

Mrs. William C. Behen

To the petition as amended with its exhibits attached thereto, appellee filed a general demurrer which was sustained by the court. The sole ground upon

which the chancellor sustained the demurrer, as shown by the opinion filed in the record, was that appellee, being a married woman, as shown in the petition, and her husband not having joined with her, she was without power or authority to enter into an executory contract to sell her real estate, as the agreement allegedly entered into with appellant ultimately provides for at the termination of the 20 year lease. He cites and relies on section 404.020 KRS. The chancellor was of the opinion that the Act of 1942 amending section 404.-030 so as to allow a married woman to convey or encumber her real estate without her husband joining did not by implication repeal that part of section 404.020 which prohibits a married woman from making an executory contract to sell or encumber her real estate unless her husband joins in the contract.

## Questions in Issue.

In his brief, appellant asks reversal of the lower court's ruling on three grounds: First—that the lower court erred in holding that the appellee, being a married woman, could not enter into an executory contract for the sale of her land unless her husband joined in said contract. Second—that the contract is not one for a sale of her real estate and may never result in such sale unless appellant exercises his option to purchase at the end of 20 years, but is a lease, which a married woman has the right to execute. Third—that the contract is severable and if the court should hold appellee had no right to grant an option to sell, she had the right to lease her property and she should be required to carry out that part of her agreement.

Since the case must be reversed on the first ground, it will not be necessary to consider the other two grounds relied on.

## Historical Background.

Old sections 2128 and 2129, Carroll's Kentucky Statutes, now sections 404.020 and 404.030, KRS, are parts of the Weissinger Act enacted by the legislature in 1894, Laws 1894, c. 76. That Act took quite a forward step in freeing married women from the complete control and domination of their husbands concerning their property. Before that Act, a wife's property was not

her separate estate, unless made so by the deed or instrument creating it, and her personal property, when reduced to possession by her husband, became his absolutely. Section 33 of the Weissinger Act, later section 2128, Carroll's Kentucky Statutes, now section 404.020 KRS, gave her the right to take, acquire and hold real and personal property by gift, devise or descent, or purchase, and to sell and dispose of her personal property as if unmarried. It gave her the right to make contracts and to sue and be sued as a single woman, but provided that she may not make any executory contract to sell, convey or mortgage her real estate unless her husband joined in the contract.

Prior to the Act of 1942, which will be later discussed, it has been held that a wife could not enter into an executory contract of sale of her real estate without her husband joining therein. Jetter v. Weber, 241 Ky. 96, 43 S. W. 2d 514; Miller v. Johnson, 213 Ky. 473, 281 S. W. 467.

Section 34 of the Weissinger Act, later section 2129, Carroll's Kentucky Statutes, provided that a husband and wife may convey her lands and chattels real but the conveyance must be acknowledged and recorded in the manner required by the chapter on conveyances. Under the chapter on conveyances, it was set out in section 506, Carroll's Kentucky Statutes, how this conveyance could be made—by joint deed of husband and wife or by separate instrument, but if by separate instrument, the husband must first convey or have theretofore conveyed.

Prior to the Act of 1942, hereinafter referred to, it had often been held, and it was well settled, that the deed of a wife, even of her own property, without her husband joining was absolutely void and conveyed no title whatever, not even her interest therein. Foust v. Hill, 215 Ky. 364, 285 S. W. 235, and cases therein cited. On the contrary, a husband could always convey his property without his wife joining and give a good title, subject to her dower interest, of course, where she did not join in.

### 1942 Act.

In 1942, the legislature enacted chapter 152 of the Acts of that year. Section 5 of that Act completely re-

pealed section 506, Carroll's Kentucky Statutes, above referred to, which had required the husband to join in all conveyances of a wife's real estate in order to validate them. Section 4 of that Act amended section 2129, Carroll's Kentucky Statutes. As amended, it is now embodied in section 404.030, KRS, the pertinent part of which reads as follows:

"A married woman may sell, convey or encumber any of her lands and chattels real, but such sale, conveyance or encumbrance shall not bar the husband's right to curtesy unless he joins in the instrument of sale, conveyance or encumbrance or releases his right to curtesy by separate instrument."

The effect of the 1942 Act is to place a married woman on an equality with a married man in the conveyance of her real estate and that appears to have been the intention of the legislature. Whereas previous to that Act, he could convey his property without his wife joining, except to release her dower, and she could not do likewise with reference to her property *after* the Act, she could convey her property without her husband joining, except to release his curtesy.

tiun 2128, Carroll's Kentucky Statutes, which says she
The Act did not directly repeal that part of section 2128, Carroll's Kentucky Statutes, which says she may not make any executory contract to sell or convey or mortgage her real estate unless her husband joins in the contract. Was that part of this section repealed by implication? We are of the opinion that it was. We realize that repeals by implication are not favored and this principle is too well settled to require the citation of authorities. But where the provisions of a statute cannot have their force and effect without the repeal of another statute, or parts thereof, those conflicting statutes, or parts thereof, must be deemed repealed by implication. We think the Act of 1942 presents such a situation. The purpose of that Act apparently was to wipe out the last remaining restrictions on the sale and conveyance by a married woman of her real estate. What advantage would it be to her if she could make such a sale or conveyance as of today but could not enter into an agreement to do so as of tomorrow? No sale or conveyance of real estate is a wholly spontaneous transaction. Preliminary discussions and propositions

back and forth lead to agreements and eventually to a deed of conveyance. It would seem to be unduly restrictive on a married woman's property rights to say, as the Act of 1942 did, that she could "sell, convey and encumber her lands" and yet to keep in effect the clause in the older Act which forbade her from entering into an executory contract to do the same thing tomorrow or next week or at some other future time. As long as a wife could not sell, convey or mortgage her property without her husband joining, as she could not prior to the Act of 1942, it was logical that she could not enter into an executory contract to do the same thing. But when the Act of 1942 gave her the right to sell, convey or mortgage her property without her husband joining, it is logical to hold that the Act intended to give her the right to enter into an executory contract to do the same thing. Otherwise, it would have been extending her a right but withholding from her the thing by which she could, in practical effect, benefit by that right. We think that when the legislature in 1942 gave a married woman the right to sell, convey or encumber her lands without her husband joining, it gave her the right to enter into an executory agreement to do so without her husband joining and we so hold.

### Other Questions Raised.

In his brief, counsel for appellee raises two questions, neither of which has been briefed by the attorney for the appellant. These two questions are:

1. That the demurrer should be sustained because the exhibits filed with the petition show they do not comply with the requirements of the statute of frauds.

2. That specific performance should be denied appellant because of the inequities of his cause of action as set out in the petition.

The basis of the first contention is that since the exhibits, both the alleged agreement and the lease drawn up pursuant thereto, show on their face that they were not signed by appellee, they are within the statute of frauds and, therefore, demurrer should be sustained to the petition. We do not say that the petition may not be demurrable when it shows on its face that it does not comply with the statute of frauds. Section 371.070,

sub-section 6, KRS. In other words, we do not hold that the statute must be pleaded and cannot be raised on demurrer in a proper case. It is not alleged by appellant that the lease and option have been signed by appellee as that is the very purpose of the suit. However, appellant's petition as amended alleges that the contract to execute the lease and option is in writing. He apparently relies on the telegram filed as Exhibit A, and heretofore referred to, as appellee's written acceptance of and in effect her signature to the contract. We are not deciding that the telegram is sufficient written acceptance when properly put in issue. By proper pleading and proof, appellee may show otherwise. We are only deciding now that the demurrer admits as true the allegations of the petition that the contract to execute the lease and option is in writing.

As to appellee's second contention, that clearly goes to the merits of the case and is not properly raised by demurrer. By proper pleadings and proof, appellee may be able to show many reasons which would justify the trial court in denying specific performance. These cannot be raised on demurrer.

For the reasons herein indicated, the judgment of the lower court is reversed and the case is remanded for further proceedings consistent with this opinion.

Judgment reversed.